Scott, J.
If the facts stated in the petition show the defendant to have been guilty of a breach of contract, or derelict in respect to a legal duty, we think the plaintiff’s claim.cannot be resisted on the ground that the contract was made, not with the plaintiff, but with an agent acting in his own name, or that the supposed duty was owing to the agent and not to his principal. The bank had the same right to send the notes in controversy by McElroy as a special agent, *276 as it would to have carried them over the same road undei the same circumstances through its president, cashier, or any other officer; and McElroy had the same right to carry the notes for the bank, as for himself, had they been his property. We fully concur with the supreme court of the United States in the case of The New Jersey Steam, Navigation Co. v. The Merchants’ Bank of Boston, 6 Howard, 3M (cited by counsel), where it is said: “ The cases are numerous in which the general owner has sustained an action of tort against the wrongdoer for injuries to the property while in the hands of the bailee. The above cases [referring to cases previously cited,] show that it may be equally well sustained for a breach of contract entered into between the bailee and a third person. The court look to the substantial parties in interest, with a view to avoid circuity of action, saving, at the same time, to the defendant all the rights belonging to him if the suit had been in the name of the agent.” We may add that our code of civil procedure requires actions generally to be prosecuted in the name of the real party in interest; and if the plaintiff’s property was destroyed solely through the negligence of the defendant, and without fault on the pai't of the agent, it is clear that the estate of the latter cannot be held liable for the loss, and the liability, if there be one, rests on the defendant. We think, then, that the case stands on the same grounds and presents precisely the same questions, as though the notes had been the property of McElroy, and he, having survived, had brought this action to recover of the defendant for their loss. Could such action be maintained, under the state of facts shown by the petition ?
In the able and elaborate argument of counsel for plaintiff, the right to recover is based upon two distinct grounds :
1. That the plaintiff’s property being at the time of its destruction where it was lawfully — that is, in the exercise by the plaintiff of a legal right in reference to it — and being, without any fault of the plaintiff, destroyed by the negligence of the defendant, m the management of its own property, a *277 right of action accrues for the damage, by virtue of the maxim, sic utere tuo, ut aliemum non Icedas.
2. That the duty which the defendant, as a common carrier of passengers, owed to McElroy to exercise care and skill in transporting him safely, extends to all articles of value which, at the time, he had lawfully in his possession, or about his person, so as to entitle him, or its owner, in case Of injury resulting from a breach of that duty, to recover compensation for the damage done to such property.
As to the first of these propositions, we do not call in question the justice or soundness of the maxim upon which it is supposed to rest. The only doubt is as to its proper application to the present case. Though stated as a distinct ground of the plaintiff’s claim, I do not find it easy to consider, discuss, and apply to the case, the first proposition, without any reference whatever to the second. Eor, it will be observed that this first proposition is not based upon any contract between the parties, between McElroy and the defendant ; nor does it at all rest upon any liability on the part of the defendant as a common carrier of goods or of passengers ; it ignores the fact that McElroy, with the plaintiff’s money about his person, was a passenger being carried on defendant’s ears; and regarding McElroy and the plaintiff merely as portions of the general public, it seeks a recovery on the ground that the defendant negligently so conducted its business in the running of its train of cars as to destroy the plaintiff’s property. Tet it proceeds on the important assumption that the plaintiff’s money was lawfully where it was, at the time when the catastrophe occurred; that is, that McElroy, as a passenger on defendant’s train of cars, had a right to carry the money with him, and, without notice to defendant, to subject it to such perils as might arise from the negligence of defendant’s servants in the management of the train. Had the money not been in the defendant’s car it would not have been subjected to the peril which caused its destruction; and the question whether it was lawfully there, necessarily involves a consideration of the second proposition. Damage resulting from the negligence of another will not *278 in all cases constitute a canse of action. Should A. through negligence burn his own house, and with it the property of B., placed therein without the knowledge or consent of A., we apprehend B. could not hold A. liable for the loss. We can not, therefore, ignore the fact, that the carrying of the money in defendant’s car was an essential element in the circumstances occasioning the loss, nor the fact that it was so carried by a person whose only right to be there was in virtue of his character' as a passenger. To ascertain the rights of McElroy as such passenger, and the obligations and liabilities of the defendant as a common carrier, in respect to the property destroyed, necessarily requires a consideration of the second proposition, which bases the right to a recovery on the relation subsisting between McElroy and the defendant, at the time of the loss, and the duties. and obligations which that relation imposed on the defendant.
As we have said, the relation subsisting between McElroy and the defendant was that of passenger and common carrier, and it was in virtue of that relation that plaintiff’s money was brought into defendant’s car, and became exposed to the peril which caused its loss. What, then, was the contract between the defendant, as a common carrier of passengers, and McElroy, and what was the extent of the obligations imposed on the defendant by law, in virtue of that contract ?
Upon well-settled principles the defendant became bound, in consideration of the fare paid by McElroy, to use the highest degree of diligence and care in transporting him to liis place of destination. And this contract for the carriage of his person necessarily included the wearing apparel which accompanied his person, such reasonable sum of money as might be in good faith carried with him for the expenses of the journey, together with all such articles, to a reasonable extent, at least, as are ordinarily carried or worn upon the person for purposes of personal use, convenience, or ornament ; and we agree with counsel for plaintiff that the contract also included the carriage of “ his baggage delivered to the defendant as such to be carried, to the extent of an ordinary and reasonable wardrobe for one in his station in lifq *279 ogether with such articles as are usually found in the para ■ pliernalia of a traveller.”
But the notes for the loss of which this action is brought can neither be regarded as a part of the passenger’s baggage, nor as money intended to defray the expenses of the journey. The statements of the petition show that the notes were simply being transmitted, for business purposes, from Greenfield to Cincinnati, and were not intended to be used by the passenger for defraying the expenses of his journey or otherwise. The trip may have been undertaken on account of the money, but the money was not carried on account of the trip. Nor was the defendant entrusted with the custody of these notes, or specially charged with any care or oversight in respect to them. They remained in the exclusive custody and control of MeElroy. And as they were clearly not included in the contract for the transportation of the passenger and his baggage, and were not subjected to the custody of the carrier, it is difficult to see how he can be held liable for a want of care over them.
"We do not call in question the right of a passenger to carry about his person for the mere purpose of transportation, large sums of money, or small parcels of great value, without communicating the fact to the carrier, or paying anything for their transportation. But he can only do so at his own risk, in so far as the acts of third persons, or even ordinary negligence on the part of the carrier or his servants is concerned. For this secret method of transportation would be a fraud upon the carrier, if he could thereby be subjected to an unlimited liability for the value of parcels never delivered to him for transportation, and of which he has no knowledge, and has therefore no opportunity to demand compensation for the risk incurred. No one could reasonably suppose that a liability which might extend indefinitely in amount would be gratuitously assumed, even though the danger to be apprehended should arise from the inadvertent negligence of the carrier himself.
Whether the defendant is engaged in the business of transporting valuable packages, does not appear from the *280 petition; but be that as it may, tbe transaction and contraer of McElroy was with the defendant in its character of a carrier of passengers only. The defendant might well have declined all responsibility for the negligence or dishonesty of its servants in respect to valuable parcels, by refusing to engage in their transportation, and if it was engaged in such business, it might well insist upon having exclusive custody of the parcels during transportation, and upon compensation for the trouble and risk incident to the business, as conditions of its liability.
It is claimed in argument that a common carrier of passengers has no reason to complain if he be held responsible for a loss of property resulting as a direct consequence from the want of that degree of care which the law requires him to exercise toward the persons of his passengers. But in the case of a breach of 'contract, the delinquent party can only be held liable for such damages as are so far the natural and direct result of the breach that they may reasonably be presumed to have been in the contemplation of the pai'ties when the contract was entered into. Now admitting the breach of contract with McElroy, the question is as to the extent of the liability incurred. It would seem from the petition that the defendant dealt with McElroy only as an ordinary passenger, seeking transportation for himself and ordinary oaggage. He could not reasonably suppose that the defendant, by selling him a ticket and agreeing to carry him and his baggage with due care, contemplated incurring a liability in respect to a large sum of money, of which defendant had no knowledge, and which he was carrying solely for the purpose of transferring it from one point to another.
The ease made by the petition is not one in which the plaintiff’s property has been destroyed by an act of positive misfeasance in the nature of a forcible trespass. The defendant is not charged with its wilful destruction, nor.with such gross negligence as would approximate to wantonness. Both the petition and the argument of counsel proceed upon the theory that any negligence which would render a carrier of p*.; engers liable f r personal injury sustained by a pas *281 senger, will make him, at the same time, liable for all damages resulting therefrom to any property which the passenger may have lawfully with him or about his person at the time. The doctrine thus broadly stated is, we think, unsustained by authority, and cannot be maintained upon principle. In effect, it ignores the distinction between the property covered by the contract for transportation and that which is outside of it.
In the very elaborate argument of counsel, many cases have been referred to which we do not think it necessary to review. It may be sufficient to say that they are all clearly and broadly distinguishable from the present case. No case has been found in which an action like the present has been held maintainable. Indeed, counsel frankly concede its novelty. While this objection may not be absolutely conclusive against the plaintiff, yet the fact furnishes strong evidence of the very general understanding of the legal profession on the subject.
We think the demurrer to the petition was properly sustained by the court below, and its judgment is therefore affirmed.
Brinkerhoee, O.J., and Welch, White, and Day, JJ., concurred.